## Lacoste *v.* Sellick et al.

Where a slave hired by the owners of a steamer loses his life, in consequence of an accident produced by the neglect of the officers of the steamer to comply with the 10th sect. of the statute of 6th March, 1834, prescribing certain precautions to be observed to avoid collisions, the owners of the steamer will be responsible for the value of the slave ; and in an action against them they cannot require that the officers and crew of the boat should be made parties, on the ground that the obligation is *ex delicto* and all are jointly liable.    The owners of steamers employed in transporting personal property for hire are commercial partners, and bound *in solido* in all the obligations growing out of the business of the partnership.

In an action by J. P. L——, against certain persons as owners of the steamer R., defendants filed an answer in' these words: "J. P. L—— *v.* S—— et al., owners of the steamer R. The defendants in the above entitled suit" &c., setting forth their grounds of defence. There was no special denial of their being the owners.    *Held*, that there was such an admission of their ownership as rendered further proof unnecessary.

APPEAL from the Parish Court of New Orleans, *Maurian*, J. *Maurian*, for the plaintiff, cited Civil Code, arts. 2294, 2299.    Stat. 6th March, 1834, s. 10.    *Saune* v. *Tourné*, 9 La. 425.    *Brand* v. *Tourné*, 10 La. 130.    *Eber* v. *Tourné*, Ibid, 131.

*W. D. Hennen*, for the appellants.    The ownership of the steamer is neither alleged nor proved.    1 Rob. 178.    The defendants being joint trespassers are only jointly liable.    Civil Code, art. 2304.    The statute of 19 February, 1844, which changed the English text of this act to correspond with the French, so as to make co-trespassers liable *in solido*, was promulgated on the 21st February, 1844, and did not take effect beyond the seat of government till thirty days after (B. & C.'s Dig. p. 541, No. 1); so that that act was not in force till after the collision, which happened on the 14th of March, 1844.    See *Barney* v. *De-Russy*, 1 Rob. 75.    *Loussade* v. *Hartman*, 16 La. 117.    The officers of the steamer should have been made parties.    Civ. Code, arts. 2080, 2081.    *Jordan* v. *White*, 4 Mart. N. S. 340, and the case from 16 La. 117, just cited.    It is neither averred nor proved that the act which caused the injury could have been prevented by the owners.    Without such allegations and proof, principals cannot be held responsible for the acts of their agents.    Civil Code, art. 2299.

*Duncan* v. *Hawks*, 18 La. 549.    *Ware* v. *Barrataria and Lafourche Canal Co.*,    LACOSTE
15 La. 170.    *Strawbridge* v. *Turner*, 8 La. 537.                                              *v.*
                                                                                              SELLICK.
The judgment of the court was pronounced by

KING, J.    This is a suit instituted to recover from the defendants, *in solido*, as captain and owners of the steamboat Rainbow, the value of a slave, who is alleged to have died of injuries received while in their employment, for which they are answerable.    The Rainbow came in collision with the steamboat American Eagle while navigating the Mississippi river, by which the connection pipes of the former were broken, and, from the steam which escaped, the slave in question received a scald, of which he subsequently died.    It is averred that the occurrence was caused by the fault and bad management of the captain and crew of the Rainbow.    The case was tried by a jury, who gave a verdict for the plaintiff, and the defendants have appealed.    The evidence, though not free from conflict, establishes distinctly facts which fix upon the defendants the responsibilities resulting from the collision.

The statute of 6th March, 1834, provides " that it shall be the duty of the master and pilot of a steamboat, when descending any river or stream in the limits of this State, when within one mile of an ascending steamboat, to shut off the steam and ring the bell, and permit the boat to float upon the current of the river, until the ascending boat shall have passed ; and the master and owner of the ascending boat shall then assume the responsibility of steering clear of the descending boat, and be liable in damages to the extent of the injury that may be sustained."    Bullard & Curry's Dig. p. 794.

The collision occurred at night, while the American Eagle was ascending, and the Rainbow descending the river.    When the Rainbow was discovered, the alarm bell of the American Eagle was rung, which was answered.    Finding that the Rainbow neither stopped, nor shut off her steam, and that a collision was likely to ensue, the alarm bell of the American Eagle was rung a second time, the headway of the boat was stopped, and several backward revolutions of her engine had been made when the collision took place.    The engine of the Rainbow was not stopped until after the disaster, although the propriety of doing so was suggested by the pilot, when he saw the impending danger.

The defendants contend that it is neither alleged, nor proved, that they were the owners of the Rainbow ; that there is no proof that they hired the slave in question ; that the obligation incurred by them, if any, arises *ex delicto*, and not *ex contractu* ; that all the officers and crew of the boat are equally answerable for the consequences of the act complained of, and should have been made parties defendant.

Although the petition is not prepared with much precision, it cannot be construed otherwise than as charging the defendants as captain and owners.    The defendants made no exception to this supposed defect in the court below, but filed an answer, which is headed : " *Jacques P. Lacoste* v. *Stephen S. Sellick el al., owners of the steamboat Rainbow*," and proceeds, " The defendants in the above entitled suit, &c.," setting forth their matters of defence.    This, taken in connection with the body of the answer, in which there is no spcial denial of their ownership, is such an admission of their property in the boat as rendered further proof of the fact unnecessary.

It was admitted on the trial, that the slave was hired on board of the Rainbow, and the defendants in their answer say, " that in the management and

LACOSTE
v.
SELLICK.

control of the plaintiff.'s slave, they used all the care and diligence which the law requires." These are certainly sufficient admissions of the alleged hiring.

Owners of steamboats transporting personal property for hire are commercial partners, and bound *in solido* for all the obligations growing out of the business of the partnership. The contract for the hire of the slave was one entered into with the view of furthering the objects of the partnership, and, as lessees, the defendants incurred an obligation *in solido*, to restore him to his owner, in the condition in which he was received. The nature of this obligation they are not permitted to change, by alleging their own tortious acts. The liability of the defendants not being joint, it was not necessary to make other parties to the suit.

*Judgment affirmed.*